UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONNIE KAUFMAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>INTERNATIONAL LONGSHORE & WAREHOUSE UNION, et al.,<br><br>　　　　Defendants. | Case No. 14-cv-03237-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 21 |

Pending before the Court is Defendants International Longshore and Warehouse Union and ILWU Local 34's Motion for Summary Judgment. ECF No. 22. For the reasons set forth below, the Court will grant the motion.

## I.   BACKGROUND

### A.   Parties, Claims, and Procedural History

Plaintiffs Ronnie Kaufman and Alphonce Jackson, proceeding *pro se*, bring claims against Defendants International Longshore and Warehouse Union ("ILWU") and ILWU Local 34 ("Local 34") for violations of section 501 of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA") and section 301 of the Labor-Management Relations Act ("LMRA"). See Second Amended Compl., ECF No. 18. Plaintiffs are marine clerks and members of Local 34. ECF No. 25-1, Ex. A, Kaufman Depo. Tr. 8:4-17; ECF No. 25-2, Ex. B, Jackson Depo. Tr. 9:5-10.

Plaintiffs allege that Defendants breached the duty of fair representation by conspiring to form and promote a rival union consisting of office clerical workers and by failing to preserve seniority rights and vesting rights in allowing unregistered workers obtain clerk planner jobs before registered marine clerks. See generally ECF No. 18. They also allege that Defendants breached their fiduciary duty by using membership dues in a manner that did not solely benefit Local 34 and its members. Id. at 10. Jackson also claims that the ILWU breached its duty of fair

1  representation when it changed its pension policies and denied him the ability to concurrently
2  work and collect his pension. See id. at 9; Jackson Depo. Tr. 24:25-25:10. Plaintiffs request that
3  the Court issue an injunction giving registered marine clerks access to planner jobs on a seniority
4  basis. Id. at 11.

5        On July 7, 2014, Plaintiffs filed their complaint, and on July 31, 2015, filed their amended
6  their complaint. ECF Nos. 1, 9. On November 5, 2014, Plaintiffs filed their second amended
7  complaint. ECF No. 18. On July 23, 2015, Defendants filed their motion for summary judgment.
8  ECF No. 22.

9      **B.**    **Facts**

10        The ILWU is an international labor organization with local affiliates representing workers
11  primarily in the maritime industry. ECF No. 23, Decl. of Russell Bargmann ¶ 3. Local 34 is a
12  chartered, affiliated local representing maritime workers in the San Francisco Bay Area. ECF No.
13  24, Decl. of Sean Farley ¶ 3. The majority of Local 34's members are marine clerks and
14  longshore workers who are a part of a coast-wide bargaining unit. Id. ¶ 9. Workers in that
15  bargaining unit are employed by the Pacific Maritime Association ("PMA") and its member
16  companies in ports along the West Coast. Bargmann Decl. ¶ 8. The ILWU serves as the exclusive
17  bargaining representative for marine clerks and longshore workers working for PMA members.
18  Id.

19        The collective bargaining agreements ("CBAs") between the ILWU and its locals and
20  PMA, on behalf of its member companies, govern the terms and conditions of longshore and
21  marine clerk work in all ports on the Pacific Coast. Farley Decl. ¶ 10. The CBA consists of the
22  Pacific Coast Clerk's Contract Document ("PCCCD"), which governs the terms and conditions of
23  employment for marine clerks employed by PMA member companies, and the Pacific Coast
24  Longshore Contract Document ("PCLCD"), which governs the terms and conditions of
25  employment for longshore workers employed by PMA member companies. Id.

26        Section 8 of the PCCCD specifically sets out the employment and dispatch priority for
27  marine clerks:

28            8.14 Clerks not on the registered list shall not be dispatched from the

> dispatching hall or employed by any employer while there is any man on the registered list qualified, ready, and willing to do the work.
>
> 8.41 First preference of employment and dispatch shall be given to fully registered clerks who are available for employment covered by Section 1 of this Contract Document in accordance with the rules and regulations adopted by the Joint Port Labor Relations Committee. A similar second preference shall be so given to limited registered clerks. The Joint Coast Labor Relations Committee shall be authorized to effectuate such preferences in such manner and for such times and places as it determines in its discretion.

ECF No. 28, Ex. G. Section 17 of the PCCCD describes the exclusive, multi-step grievance and arbitration procedure used to settle disputes related to the agreement. Farley Decl. ¶13; ECF No. 28, Ex. G. The Joint Port Labor Relations Committee, comprising of employer and union representatives at a specific port, first hears the dispute. Id. Next, any unresolved dispute is then referred to an arbitrator. Id. The arbitrator's decision can be appealed to the Coast Labor Relations Committee – comprised of members from the ILWU and the PMA. Id. Finally, if the dispute remains unresolved, it may be submitted to the Coast Arbitrator. Id. The grievance procedure must be exhausted before members seek other remedies. Id.

Pension benefits for marine clerks are administered by the ILWU-PMA Pension Plan, a separate entity from the ILWU. Bargmann Decl. ¶ 15.

Plaintiffs are registered marine clerks and members of Local 34. Kaufman Depo. Tr. 8:4-8; Jackson Depo. Tr. 9:5-10. Kaufman joined Local 34 in February 2007 and has worked as a marine clerk since then. Kaufman Depo. Tr. 8:15-17. Jackson began as a longshoreman in 1960 and became a registered marine clerk in 2001. Jackson Depo. Tr. 9:11-25. Marine clerks are responsible for performing clerical functions related to cargo coming into and out of marine terminal facilities. ECF No. 28, Ex. G.

Local 34 also represents office clerical workers, who are a part of the "Allied Workers Division" referenced in Article XIV of Local 34's Constitution. Farley Decl. ¶ 18; see ECF 24-1 at 24. The office clerical workers are employed by three companies –Yusen, Maersk, and SSA/Matson – in the Port of Oakland. Farley Decl. ¶ 18. The office clericals at SSA/Matson became a part of Local 34 in 1978, the office clericals at Yusen in 1996, and the office clericals at Maersk in 1997. Id. ¶ 22. Office clerical workers are part of separate bargaining units with their

3

own collective bargaining agreements negotiated and administered by Local 34. Id. ¶¶ 18-19. Office clerical workers do not work under the PCCCD and are not bound by provisions in the PCCCD. Id. ¶18. Along with Local 34 serving as the bargaining agent, the President of Local 34 also represents office clerical members in grievance hearings. Id. ¶ 19. Office clericals book cargo onto ships, prepare maintenance records, perform vessel planning work, and act as boarding agents on behalf of shipping lines. Id. ¶ 21.

In 2012 and 2013, Local 34, a committee of office clerical workers, and PMA met to discuss merging the office clerical workers into the same coast-wide bargaining unit as the marine clerks. Id. ¶ 23. This merger was rejected, and consequently, marine clerks and office clericals have remained in separate bargaining units. Id. ¶ 22. The status of Local 34's contract negotiations for the office clerical workers was reported in membership-wide meetings in 2012 and 2013 and in Local 34's newsletters. Id. ¶¶ 24-26, Exs. C, D.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED R. CIV. P. 56(c). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." Id. The court draws all reasonable factual inferences in favor of the non-movant. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255 (1986). "[A]t the summary judgment stage," courts are "not permitted to weigh evidence." Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1121 (9th Cir. 2010).

## III.    DISCUSSION

Defendants move for summary judgment as to each of Plaintiffs' claims. ECF No. 22. Defendants argue that summary judgment is appropriate because the claims are untimely, Plaintiffs did not exhaust internal and administrative remedies, and the claims fail on their merits.

4

Id.

**A.  Section 501 of the LMRDA**

Section 501 of the LMRDA outlines the general fiduciary responsibility for officers and employees of labor organizations. That section gives a union member the right to sue an "officer, agent, shop steward, or representative" of a labor organization "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization" whenever such person has violated her fiduciary duties to the union or its members. 29 U.S.C. § 501(b). Under section 501, "officers of labor unions are held to the highest standards of responsibility and ethical conduct in administering the affairs of the union." Servs. Employees Int'l Union v. Nat'l Union of Healthcare Workers, 718 F.3d 1036, 1044 (9th Cir. 2013). A court's ability to intervene, however, is tempered by the "well-established federal policy of avoiding unnecessary interference in the internal affairs of unions." Teamsters Joint Council No. 42 v. Int'l Bhd. of Teamsters, 82 F.3d 303, 306 (9th Cir.1996).

**1.  Prerequisites to Filing Suit**

Before bringing suit under section 501, a plaintiff must meet certain conditions precedent:

> First, the labor organization or its governing board must have refused or failed "to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so" by a member. Second, a complaint may be filed only upon leave of the court obtained after the plaintiff has (a) filed a verified application, and (b) shown there is good cause for filing the complaint. The application may be made ex parte.

Cowger v. Rohrbach, 868 F.2d 1064, 1066 (9th Cir. 1989) (citing 29 U.S.C. § 501(b)). These conditions are designed to protect unions from unduly harassing litigation. Id.

Plaintiffs allege that Defendants breached their fiduciary duty by not spending "union money solely for the benefit of the organization and its members" and instead using the marine clerk membership dues to benefit office clericals. ECF No. 18 at 10. Kaufman testified that Local 34 breached this duty because the President of Local 34 is paid through marine clerk membership dues, yet serves as the business agent for the office clerical units. Kaufman Depo. Tr. 71:9-25. Plaintiffs also allege that Defendants violated their respective constitutions by failing to preserve seniority rights, when Defendants allowed casual workers to be dispatched before registered

5

workers, and jurisdictional rights, when Defendants did not give marine clerks first access to available planner jobs.

Defendants argue that Plaintiffs have failed to meet section 501's two conditions precedent before filing their complaint. Defendants offer evidence that Plaintiffs did not ask the ILWU or Local 34 to pursue their section 501 claim on their behalf. Indeed, both Plaintiffs acknowledged as much in their depositions. See Kaufman Depo. Tr. 30:8-15; Jackson Depo. Tr. 45:12-22. Defendants also offer evidence that Plaintiffs did not file an application for leave to file their complaint. See Kaufman Depo. Tr. 34:15-20; Jackson Depo. Tr. 50:13-16. Plaintiffs offer no evidence in rebuttal. Defendants have established that Plaintiffs did not follow the procedures required to bring a section 501 claim. See Shek v. California Nurses Ass'n/Caregivers & Healthcare Employees Union, No. C-10-1483 EMC, 2010 WL 3155830, at *8 (N.D. Cal. Aug. 9, 2010) (dismissing plaintiff's 501 claim because he failed to seek leave of court).

### 2. Suits Against Unions

Defendants are entitled to summary judgment for an additional reason: section 501 provides a right of action against the officers and employees of a labor organization, but not against the labor organization itself. See 29 U.S.C. § 501(b) (providing a right of action against an "officer, agent, shop steward, or representative" of a union); Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547, 587 F.2d 1379, 1386 n.6 (9th Cir. 1978) ("Section 501 does not provide for suit against a labor organization[.]") Both ILWU and Local 34 are labor organizations.

For all the foregoing reasons, the Court grants summary judgment on Plaintiffs' section 501 claims. See Masters v. Screen Actors Guild, No. 04-2102 SVW (VBKX), 2004 WL 3203950, at *15 (C.D. Cal. Dec. 8, 2004) (granting partial summary judgment to defendant because the defendant was not proper party to the 501 claim and because plaintiff had failed to demonstrate that he requested the union to take remedial action).

### 3. Statute of Limitations

Defendants also argue that Plaintiffs failed to bring their section 501 claim within the statute of limitations. The LMRDA does not include a statute of limitations provision, and the

courts have taken a variety of approaches in setting one.

Generally, when federal law fails to "provide explicitly for a limitations period for a federal action," courts borrow "the most closely analogous statute of limitations under state law" unless doing so is "at odds with the purpose or operation of federal substantive law." DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 158, 161 (1983). LMRDA claims that are analogous to fair representation claims borrow the six-month statute of limitations period applicable to unfair practices claim under section 10(b) of the National Labor Relations Act. Gardner v. Int'l Tel. Employees Local No. 9, 850 F.2d 518, 522 (9th Cir. 1988). However, some courts have applied the federal doctrine of laches when the 501 claims are equitable in nature. See, e.g., Fonti v. Health Prof'ls & Allied Emps., No. 13-4231 ES, 2015 WL 1523834, at *5 (D.N.J. Apr. 2, 2015) (applying the doctrine of laches, rather than a specific statute of limitations, to the section 501 claim); Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenawalt, 880 F. Supp. 1076, 1084 (M.D. Pa. 1995) (applying the doctrine of laches because the 501 claim was analogous to an equitable accounting claim). Other courts have applied the analogous state statute of limitations for breach of fiduciary actions. See, e.g., Austin v. Trandell, 207 F. Supp. 2d 616, 623 (E.D. Mich. 2002) (applying Michigan's statute of limitations for breach of fiduciary duty actions brought against corporate officers because section 501 claims are akin to a shareholder derivative action).

Because the Court grants summary judgment on other grounds, it need not determine the appropriate statute of limitations here, and does not reach Defendants' argument.

**B.      Section 301 of the LMRA**

Section 301 provides a right of action for a union's violation of the duty of fair representation. 29 U.S.C. § 185. "In order to maintain an action for breach of the duty of fair representation, a claimant must establish that the union has acted toward him in an arbitrary, discriminatory, or bad faith manner." Carter v. Smith Food King, 765 F.2d 916, 919-20 (9th Cir. 1985) (citation omitted).

**1.      Exhaustion**

Before bringing a claim under section 301, a member of the collective bargaining unit must

7

first exhaust any contractual grievance procedures. Carr v. Pac. Mar. Ass'n, 904 F.2d 1313, 1317 (9th Cir. 1990). The exhaustion requirement is waived in two situations:

> First, where the union has sole power under the contract to invoke the higher stages of the grievance procedure, and if . . . the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's wrongful refusal to process the grievance; second, where grievants allege a breach of the duty of fair representation with regard to negotiating the collective bargaining agreement.

Id. at 1319 (internal quotations and citations omitted). Otherwise, "failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court." Id. at 1317.

Plaintiffs allege that Defendants breached the CBA and their duty of fair representation by dispatching casual workers before registered workers in violation of Plaintiffs' seniority rights, and not giving marine clerks priority in filling available planner jobs in violation of Plaintiffs' jurisdictional rights. But the PCCCD, which sets out the grievance-arbitration procedure for resolving disputes arising under the agreement, requires that Plaintiffs exhaust its grievance procedure before filing suit. See ECF No. 28, Ex. G ("[N]o other remedies shall be utilized by any person with respect to any dispute involving this Agreement until the grievance procedure has been exhausted"). Defendants put forth evidence establishing that neither Kaufman nor Jackson pursued their claims through a grievance procedure. See Kaufman Depo. Tr. 37:9-18; Jackson Depo. Tr. 31:20-32:2. Plaintiffs have not provided any evidence (or even argument) that the exhaustion requirement was waived. Defendants are therefore entitled to summary judgment on this claim.

### 2. Violations of the PCCCD

Even if the Court were to consider Plaintiffs' section 301 claim, that claim would still fail on the merits.

Plaintiffs allege that Defendants violated the PCCCD by allowing unregistered office clerical workers access to jobs that should have been performed by registered marine clerks. However, the dispatch priority and seniority rights outlined in the PCCCD apply to marine clerks, not to workers outside of the bargaining unit. See ECF No. 28, Ex. G; Farley Decl. ¶¶ 9-10.

Office clerical workers are outside the bargaining unit and are not bound by the PCCCD. Id.

The Court will grant summary judgment on Plaintiffs' section 301 claim on this ground as well.

### 3. Statute of Limitations

Although section 301 of the LMRA does not contain a statute of limitations, the Supreme Court has held that a six-month statute of limitations governs section 301 claims against a union for breach of a collective bargaining agreement and breach of the duty of fair representation. DelCostello, 462 U.S. at 165. Claims for breaching the CBA, with no related duty of fair representation allegations, are subject to the state statute of limitations for breach of contract. See UA Local 343 United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada, AFL-CIO v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1474 (9th Cir. 1994). In California, a breach of contract claim is subject to a four-year period. CAL. CIV. PROC. CODE § 337.

Defendants contend that regardless of whether the six-moth or the four-year time period applies, the claims are time-barred. Plaintiff Jackson testified in his deposition that the practice of dispatching non-registered workers before registered workers began in the early 2000's. Jackson Depo. Tr. 34:12-17. Plaintiffs have not offered any contrary evidence. The Court holds that Plaintiffs' section 301 claim is also time-barred.

### C. Duty of Fair Representation[1]

The duty of fair representation requires that a union "serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." Vaca v. Sipes, 386 U.S. 171, 182 (1967). The duty is a corollary of the union's status as the exclusive representative of all employees in a bargaining unit. Id. at 177. A union breaches its duty of fair representation when it acts in a way that is

---

[1] Defendants read Plaintiffs' complaint as presenting a free-standing claim for breach of the duty of fair representation. ECF No. 21 at 10. In the Court's reading of the complaint, however, all of Plaintiffs' claims are grounded in either section 501 of the LMRDA or section 301 of the LMRA. See ECF No. 18 at 5, 6, 7, 8, 9, 10. The Court errs on the side of caution and addresses the free-standing claim.

"arbitrary, discriminatory, or in bad faith." Id. at 190. "The doctrine of fair representation serves both as a limited check on the arbitrary exercise of union power and, through its limitations, allows unions wide latitude in effectively serving the interests of the bargaining unit." Adkins v. Mireles, 526 F.3d 531, 539 (9th Cir. 2008).

Defendants are entitled to summary judgment on Plaintiffs' duty of fair representation claim for two reasons. First, Plaintiffs' claims fall outside of the applicable statute of limitations. Second, on the merits, Plaintiffs have not submitted any evidence from which a reasonable jury could find in their favor on the claim.

### 1. Statute of Limitations

Claims against a union for breaching the duty of fair representation are subject to a six-month statute of limitations period. DelCostello, 462 U.S. at 172 (applying the six-month statute of limitation set forth in 29 U.S.C. § 160(b) to a suit against a union for breach of duty of fair representation). Following DelCostello, the Ninth Circuit also applies a six-month statute of limitations to LMRDA claims that are analogous to fair representation claims. Gardner, 850 F.2d at 522. The six-month period generally begins to run "when the employee discovers, or in the exercise of reasonable diligence should have discovered," the alleged breach of duty of fair representation by a union. Galindo v. Stoody Co., 793 F.2d 1502, 1509 (9th Cir.1986).

Plaintiffs first filed their complaint on July 17, 2014. See ECF No. 1. If Plaintiffs knew or should have known about Defendants' alleged wrongdoing before January 17, 2014, then their claims are barred by the statute of limitations.

Plaintiffs allege that Defendants breached its duty of fair representation because Defendants formed and promoted a rival union, the "Marine Clerks Association ILWU 34 Office Clerical Unit O.C.U.," in violation of the ILWU and Local 34's constitutional prohibitions on "dual unionism." ECF No. 18 at 5. Local 34's bylaws state that "[i]n accordance with the International Constitution, no member shall be allowed to belong to, or advocate the joining of any dual union." ECF No. 24-1, Ex. A at 27 of 35.

Defendants argue that this claim is time-barred, and point to several items of evidence that Plaintiffs were, or should have been, aware of this claim. Office clerical workers became part of

1   Local 34 not later than 1997 and negotiations to merge the office clericals' bargaining units into
2   the coast-wide bargaining unit failed in 2013. Farley Decl. ¶ 22. In his deposition, Jackson
3   acknowledged that office clerical units were established many years ago before he became a
4   registered marine clerk. Jackson Depo. Tr. 14:1-17. Defendants have also submitted executive
5   meeting minutes from January 10, 2012, May 8, 2012, and March 2013, at which Sean Farley, the
6   President of Local 34, discussed the ongoing negotiations for, and ratification of, office clerical
7   units' contracts with Local 34. ECF No. 24-4, Ex. C; Farley Decl. ¶¶ 24-25. Defendants have
8   also introduced newsletters from November 2012 that discuss Local 34's role as the bargaining
9   agent for the office clerical unit contracts, and ones from March 2013 that discuss ratification of a
10  new contract for the office clerical unit at Yusen Terminals. See ECF No. 24-4, Ex. D. At their
11  depositions, Plaintiffs acknowledged that they receive or obtain Local 34's newsletters and read
12  them with some regularity. Kaufman Depo. Tr. 16:22-17:16; Jackson Depo. Tr. 12:17-25. The
13  newsletters were also available at the union dispatch hall. Kaufman Depo. Tr. 17:2-16.

14  The totality of this evidence is compelling, and Plaintiffs have offered nothing in rebuttal.
15  The Court concludes that Plaintiffs' claim – that Defendants' breached the duty of fair
16  representation by promoting and forming a "dual union" – is time-barred.

17  Plaintiffs also allege that the ILWU breached the duty of fair representation when it made
18  changes to the ILWU Pension Plan because ILWU officers also serve as trustees. ECF No. 18 at
19  9. Specifically, Jackson stated at his deposition that Defendants breached the duty when Jackson
20  was denied the opportunity to collect his pension while also working. Jackson Depo. Tr. 24:25-
21  25:10. Jackson testified that he first became aware of this practice in 2009. Id. at 25:5. Plaintiffs
22  do not dispute or offer other evidence on the issue of when they discovered the alleged
23  wrongdoing. This claim is also time-barred.[2]

24  Plaintiffs' fair representation claims fall outside of the applicable statute of limitations, and
25  Plaintiffs have neither pled nor argued that they are entitled to equitable estoppel or equitable

---

[2] Defendants also argue that they are separate entities from the pension plan and that neither defendant "operates a pension plan or controls the administration and distribution of pension benefits for its members." ECF No. 22 at 15. Because the Court will grant summary judgment on other grounds, it does not reach this argument.

11

tolling of the statute of limitations. Defendants are entitled to summary judgment on these claims.

### 2. Arbitrary, Discriminatory, or Bad Faith Conduct

Even if the Court were to consider Plaintiffs' claim, the Court would still grant summary judgment in favor of Defendants, because Plaintiffs have not provided evidence that would allow a reasonable jury to find in their favor.

"A union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith' applies to all union activity." Air Line Pilots Ass'n, Int'l v. O'Neill, 499 U.S. 65, 67 (1991) (quoting Vaca, 386 U.S. at 190). The Ninth Circuit uses a two-step analysis to determine whether a union has breached its duty. A court must first "decide whether the alleged union misconduct involved the union's judgment, or whether it was procedural or ministerial." Marino v. Writers Guild of Am., E., Inc., 992 F.2d 1480, 1486 (9th Cir. 1993) (internal quotations omitted). If the conduct was procedural or ministerial, "then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith." Id. If the conduct involved the union's judgment, then "the plaintiff may prevail only if the union's conduct was discriminatory or in bad faith." Id. "[C]ourts should accord substantial deference to the union's decisions." Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270, 1273 (9th Cir. 1983).

The decision to add new bargaining units or safeguard certain jobs involves the exercise of the union's judgment and is not procedural in nature. Thus, Plaintiffs must show that the conduct was discriminatory or in bad faith. See Marino, 922 F.2d at 1486.

Defendants defend the decision to expand Local 34 by arguing that adding bargaining units and additional workers strengthens the union. ECF No. 21 at 12; ECF No. 24-4, Ex. D. Defendants further point out that Local 34's bylaws, which prohibits participation in a union separate from the ILWU, does not affect the formation of other locals within the ILWU or bargaining units within Local 34. Farley Decl. ¶ 8. While Plaintiffs identify that the Local 34 bylaws prohibit "dual unionism," Plaintiffs have not shown how adding the office clerical bargaining units to the *same* union (Local 34) violates this bylaw.

In the face of this showing, Plaintiffs have provided no evidence showing that Defendants acted discriminatorily or in bad faith by adding additional bargaining units to Local 34. The Court

1 grants summary judgment on this ground as well.

**CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment is granted. All pending deadlines and hearings in this action are vacated. Defendants shall submit a proposed form of judgment within seven days of the date of this order.

IT IS SO ORDERED.

Dated: September 29, 2015

_____
JON S. TIGAR
United States District Judge